UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| STEVEN WHITE, FRANK BAKER, IVAN PHILLIPS, and ANTONIO PHILLIPS, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:05-cv-162 |
| MPW INDUSTRIAL SERVICES, INC., | ) ) | Judge Mattice |
| *Defendant*. | ) ) | |

## MEMORANDUM

Plaintiffs bring this action against Defendant MPW Industrial Services, Inc. ("MPW"), alleging violations of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 to -905; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

Before the Court is Plaintiffs' Motion for Conditional Certification of Collective Action and for Court Approved Notice to Members of Collective Class. This motion relates only to Plaintiffs' claims under the FLSA. Also before the Court is Defendant's motion to strike portions of certain affidavits and declarations submitted by Plaintiffs in support of their motion.

For the reasons stated below, Plaintiffs' motion for conditional certification will be **GRANTED**, and Defendant's motion to strike will be **DENIED**.

## I. BACKGROUND

### A. Factual Background

MPW is a corporation that provides industrial cleaning services. (Court Doc. No. 36, First Am. Compl. ¶ 2.) Plaintiffs work in MPW's Industrial Cleaning and Facility Maintenance segment and operate out of MPW's branch location in the St. Elmo area of Chattanooga, Tennessee. (Court Doc. No. 34-1, Pls.' Mem. 2.) They report to work at the St. Elmo location each morning, receive their work instructions for that day, prepare equipment for use, and drive to the customer location. (First Am. Compl. ¶ 6; Pls.' Mem. 2.) Plaintiffs then report from the first customer location either to another customer location or to MPW's branch location. (First Am. Compl. ¶ 6; Pls.' Mem. 2.) At the end of each day, Plaintiffs return to the branch location to secure their equipment and then leave for their homes. (Pls.' Mem. 2.) Plaintiffs allege that MPW compensates its employees only for time spent at the customer site and not for time spent at the branch location preparing for the day's work or for time spent traveling to and from customer sites. (First Am. Compl. ¶ 6.)

Plaintiffs allege that this company-wide policy of failing to compensate employees for all hours worked results in violations of the minimum wage and overtime requirements of the FLSA. (*Id.*) Plaintiffs seek "conditional certification" of this case as a collective action under 29 U.S.C. § 216(b) and authorization for a notice to be sent to all potential members of the class that may be entitled to relief under the FLSA.

-2-

**B.    Applicable Statutes and Regulations**

The FLSA provides that an employer whose employees work longer than 40 hours in any workweek is required to pay such employees time-and-a-half for hours worked in excess of 40.  29 U.S.C. § 207(a)(1).   29 C.F.R. § 785.38 provides that time spent by an employee in travel as part of his "principal activity" – such as travel from job site to job site during the workday – must be counted as hours worked.  29 C.F.R. § 778.315 further provides that employees must be paid straight time compensation for non-overtime hours worked during a workweek and time-and-a-half for overtime hours worked during a workweek.

The FLSA includes several exemptions from its overtime requirements.  The exemption at issue in this matter, known as the Motor Carrier Act exemption, is provided for in 29 U.S.C. § 213(b)(1), which states that the overtime requirements of § 207 do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 . . . ."   Under 49 U.S.C. § 31502, the Secretary of Transportation has the power to establish requirements for "(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."

**II.    ANALYSIS**

The Court will first address the question of whether to conditionally certify a collective action and allow Plaintiffs to send notice of the collective action to putative class

-3-

members.  If the Court conditionally certifies the class, it must then address the substance and scope of the notice.

### A.     Propriety of Sending § 216(b) Notice

#### 1.     _Requirements for Section 216(b) Opt-In Notice_

Section 216(b) of Title 29 of the United States Code provides that an employer who violates § 207 is liable to the employees affected by that violation in the amount of the employees' unpaid overtime compensation.  Section 216(b) also provides that an employee can maintain a lawsuit against his employer in federal court on behalf of himself and other employees who are similarly situated and who choose to "opt in" to the collective action. Courts may facilitate such collective actions under § 216(b) by authorizing notice of the suit to potential plaintiffs.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The threshold issue in deciding whether to authorize notice to the proposed class members is whether the Plaintiffs have demonstrated that they and the proposed class members are "similarly situated."  Although some courts have recognized the use of other tests for determining whether Plaintiffs and putative plaintiffs are similarly situated for purposes of § 216(b), the greater weight of authority suggests that a two-step analysis is the proper test.  *See, e.g.*, *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Moeck v. Gray Supply Corp.*, No. 03-1950 (WGB), 2006 WL 42368, at *4 (D.N.J. Jan. 6, 2006); *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477, at *2-3 (E.D. Cal. Oct. 3, 2005); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 219 (D. Conn. 2003); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996).

-4-

The court in *Mooney v. Aramco Services Co.* described the two-step analysis adopted by most courts:

> [T]he trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – *i.e.*, the original plaintiffs – proceed to trial on their individual claims.

54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Many courts have joined the Fifth Circuit in describing the standard at the notice stage as "fairly lenient." *E.g.*, *Salinas-Rodriguez v. Alpha Servs., LLC*, No. Civ.A. 3:05VB44WHBAGN, 2005 WL 3557178, at *3 (S.D. Miss. Dec. 27, 2005); *Aguayo*, 2005 WL 2436477, at *3; *Harrison v. McDonald's Corp.*, __ F. Supp. 2d __, 2005 WL 2176956, at *1 (S.D. Ohio Sept. 2, 2005); *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). Various courts have described a plaintiff's burden at the notice stage

as requiring the following: a "modest factual showing" that the named plaintiff and putative plaintiffs together were victims of a common policy or plan that violated the law, *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005); *Diaz v. Elec. Boutique of Am.*, No. 04-CV-0840E(SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005); *Harrison*, 2005 WL 2176956, at *1; *Olivo*, 374 F. Supp. 2d at 548; *Mike*, 274 F. Supp. 2d at 220; *Realite*, 7 F. Supp. 2d at 306; "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Thiessen*, 267 F.3d at 1102; *Moeck*, 2006 WL 42368, at *4; "substantial allegations of class-wide discrimination," *Hipp*, 252 F.3d at 1219; *Aguayo*, 2005 WL 2436477, at *3; a "factual nexus" between the plaintiff's situation and the situation of other current and former employees, *Gambo*, 2005 WL 3542485, at *4; *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Salinas-Rodriguez,* 2005 WL 3557178, at *3; "some rudimentary showing of commonality between the basis for [the plaintiff's] claims and that of the potential claims of the proposed class," *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003); a "threshold showing" that the plaintiff is similarly situated to the other employees he wishes to represent, *Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, 1012 (N.D. Ind. 2005); or a "colorable basis" for the plaintiff's claim that the putative plaintiffs are similarly situated, *Harrison*, 2005 WL 2176956, at *1; *Olivo*, 374 F. Supp. 2d at 548; *Ray v. Motel 6 Operating Ltd. P'ship*, No. 3-95-828, 1996 WL 938231, at *2 (D. Minn. Mar. 18, 1996). The burden under the first step of the analysis is not heavy. *Hipp*, 252 F.3d at 1219; *Aguayo*, 2005 WL 2436477, at *3.

The second stage of analysis is much more stringent, and to avoid decertification, a plaintiff must meet a stricter standard of proving that the putative plaintiffs are "similarly

situated." *E.g.*, *Thiessen*, 267 F.3d at 1102-03; *Hipp*, 252 F.3d at 1218-19; *Aguayo*, 2005 WL 2436477, at *2; *Olivo*, 374 F. Supp. 2d at 548 n.2. Some courts have identified particular issues that are appropriately examined under this second stage of analysis. For example, in *Thiessen*, the court stated that the following factors should be reviewed during the second stage analysis: " '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . .' " 267 F.3d at 1103 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)); *see also Aguayo*, 2005 WL 2436477, at *2; *Olivo*, 374 F. Supp. 2d at 548 n.2. In *Ray*, the court listed several factors supporting decertification at the second stage analysis: " 'class members vary significantly as to age, year of termination, type of termination, division in the company in which they worked, employment status, supervisors and salaries.' " 1996 WL 938231, at *3. In *Gambo*, the court noted that the need for a fact-intensive inquiry might be a factor in determining whether to decertify a class under the second stage analysis, but the possibility of such an inquiry does not preclude notice under the first stage analysis. 2005 WL 3542485, at *4.

　　　　　2.　　*"Similarly Situated" Analysis*

　　　　To determine whether to conditionally certify the proposed class in this case, the Court must engage in the notice stage analysis described above. Before beginning that analysis, however, the Court must resolve a dispute among the parties regarding the affidavits and declarations submitted by Plaintiffs in support of their motion.

　　　　　a.　　Supporting Affidavits and Declarations

In support of their motion for conditional certification, the Plaintiffs have submitted several affidavits and declarations of current and former MPW employees and a declaration of a purported FLSA expert. Defendant MPW has moved to strike portions of several of these documents on the grounds that they contain inadmissible hearsay, are not based on personal knowledge, and contain inappropriate statements by an expert.

(1)     *Inadmissible Hearsay*

Defendant argues that portions of the affidavits of George Hardwick and Gregg Hayden[1] should be stricken because they constitute inadmissible hearsay in violation of the standard set forth for affidavits in Federal Rule of Civil Procedure 56(e). Plaintiffs argue that affidavits submitted in support of a motion for conditional certification need not meet such standard for the notice stage analysis under § 216(b).

There is certainly support for Defendant's position that the standard in Rule 56(e) applies not only to affidavits in support of motions for summary judgment but also to affidavits submitted in support of a motion for conditional certification. *E.g.*, *Harrison*, 2005 WL 2176956, at *2; *Richards v. Computer Scis. Corp.*, No. 3-03-CV-00630 (DJS), 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2004 WL 1675925, at *10; *Clark v. Dollar Gen. Corp.*, No. 3:00-0729, 2001 WL 878887, at *2. The Court, however, respectfully disagrees with the decisions of these other district courts and concludes that affidavits submitted in support of a motion for conditional

---

[1]     The Court notes that the paragraphs Defendant requests be stricken from Hayden's affidavit relate not to Plaintiffs' motion for conditional certification but to Plaintiffs' claims of racial discrimination by MPW, which are not at issue in the instant motion. Regardless of the Court's determination of the admissibility of the statements in these paragraphs, the other statements in Hayden's affidavit that are related to the motion for conditional certification would remain. Defendant's objections to these paragraphs do not address the central issue of the instant motion and are of no avail to Defendant in his opposition to the conditional certification of a collective class.

-8-

certification pursuant to § 216(b) need not meet the standard set forth in Rule 56(e). To require more at this stage of litigation would defeat the purpose of the two-stage analysis.

At the notice stage, although many courts require some factual support for a plaintiff's allegations, other courts hold that a plaintiff can meet his burden based solely on the allegations in the complaint. *Belcher*, 927 F. Supp. at 251. The Court recognizes the value of requiring some factual support for allegations of class-wide practices, but the Court believes that the better view is that such factual support need not meet the evidentiary standards set forth in Rule 56(e). The fact that some courts allow plaintiffs to rely solely on the allegations in the complaint suggests that this approach is correct.

Further, motions for conditional certification are different from motions for summary judgment in two important ways that suggest that the standards for affidavits in support of such motions should be different. First, motions for conditional certification occur at a much earlier stage in the litigation process than motions for summary judgment. Whereas summary judgment motions normally are made after the completion of discovery, motions for conditional certification normally are made when discovery is in its nascent stages. Requiring a plaintiff to present evidence in favor of conditional certification that meets the standards in Rule 56 fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case. Second, motions for conditional certification, unlike motions for summary judgment, do not seek the final disposition of a case on the merits. Requiring admissible evidence at the summary judgment stage is logical: there is a possibility that trial will be avoided by the result, so courts should decide the motions based on evidence that would be admissible at trial, if one were held. There is, however, no corresponding possibility of final disposition at the

-9-

conditional certification stage: whether a motion for conditional certification is granted or denied, the case proceeds with discovery.

As the court in *Coan v. Nightingale Home Healthcare, Inc.* stated, "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial." No. 1:05-CV-0101-DFH-TAB, 2005 1799454, at *1 n.1 (S.D. Ind. June 29, 2005). Accordingly, the Court will not strike portions of the affidavits of Hardwick and Hayden because they contain inadmissible hearsay.

(2)    *Personal Knowledge*

Defendant also argues that portions of the declarations of Frank Baker, Greg Kennedy, and Antonio Phillips should be stricken because they are not based on the personal knowledge of the affiant.

The Court's determination that affidavits in support of motions for conditional certification need not meet *all* evidentiary standards for admissibility at trial does not mean that such affidavits need not meet *any* standards. On the contrary, affidavits submitted at the notice stage must be based on the personal knowledge of the affiant. If the Court were to conclude otherwise, affidavits submitted would not be any more probative than the bare allegations in the complaint, and the requirement of factual support would be superfluous.

Defendant asserts that paragraph 10 of the Baker declaration, paragraph 10 of the Kennedy declaration, and paragraph 11 of the Antonio Phillips declaration are not based on the respective affiant's personal knowledge. All three paragraphs include the statement that the policy of not compensating employees for travel within a 75-mile radius is company-wide. Although these paragraphs do not explicitly set forth the circumstances under which the affiants came to know this information, it is reasonable to infer from the

-10-

evidence submitted that Baker, Kennedy, and Antonio Phillips, as employees of MPW, would have learned during the normal course of their employment how the company operates and what the company's policies were. *See Aguayo*, 2005 WL 2436477, at *4. Because the Court can reasonably infer that these statements are based on personal knowledge, albeit perhaps hearsay, the Court will not strike them.

Defendant also asserts that paragraph 18 of the Baker declaration, paragraph 18 of the Kennedy declaration, and paragraph 19 of the Antonio Phillips declaration are not based on the respective affiant's personal knowledge. All three paragraphs contain statements about Tim Reynolds and his brother and about Bill Savoy's response to complaints regarding Reynolds's brother. One might be able reasonably to infer that Baker, Kennedy, and Antonio Phillips gained personal knowledge of these events through their employment. More importantly, these statements do not relate to the claims at issue in Plaintiffs' motion for conditional certification; rather, they relate to Plaintiffs' claims of racial discrimination. The Court's determination of whether to strike these paragraphs will not affect the decision regarding conditional certification. As similarly noted above in relation to the Hayden affidavit, *see supra* note 1, Defendant's objections to these paragraphs do not address the central issue of the instant motion and are of no avail to Defendant in his opposition to the conditional certification of a collective class. Because these statements are unrelated to the motion at issue, it is immaterial whether the Court strikes these statements.

(3)    *Statements by Expert*

Defendant also argues that the declaration of Ken Finchum should be stricken in its entirety because nearly all of the declaration is based on hearsay or impermissibly draws "legal conclusions" and because Finchum is not qualified as an expert in FLSA issues.

First, as explained above, at this "notice stage" the Court will consider affidavits and declarations containing hearsay. Further, Federal Rule of Evidence 703 permits experts to base their testimony on hearsay, provided that facts that are otherwise inadmissible are not disclosed to the jury by the expert. At this stage of litigation, there is no concern that otherwise inadmissible evidence will reach the jury through Finchum's declaration.

Second, Defendant's argument regarding Finchum's legal conclusions also implicates the Court's determination that affidavits at the notice stage need not meet the standards for admissibility at trial. Defendant is correct that experts are not permitted to opine on the ultimate issue of liability under Federal Rule of Evidence 704, *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994), and conclusions of law in affidavits submitted in support of motions for summary judgment are to be ignored, *Harrah's Entm't, Inc. v. Ace Am. Ins. Co.*, 100 Fed. App'x 387, 394 (6th Cir. 2004). At the notice stage of analysis, however, the Court need not hold the affidavits submitted in support of a motion for conditional certification to the standards for admissibility at trial or to the standards under Rule 56(e). Although any legal conclusions would not be considered in ruling on a motion for summary judgment and would not be permitted in testimony at trial, such legal conclusions need not be stricken from Finchum's affidavit at this stage. The Court will accord any assertions by Finchum that might be regarded as legal conclusions whatever weight, if any, it believes they are due.

-12-

Third, for the purpose of determining whether there is evidence to support a collective action, Finchum has provided a sufficient basis for the Court to consider him to have legally significant expertise in the area of evaluating wage and hour violations. Defendant may move the Court to exclude Finchum's testimony from trial or from consideration at the summary judgment stage, but the Court will consider Finchum's declaration at this stage. The Court will not strike Finchum's declaration in its entirety on the basis of his qualifications as an expert.

Accordingly, Defendant's Motion to Strike will be **DENIED**.

b.    Analysis

Having resolved the parties' dispute regarding the factual support in this matter, the Court now must determine what facts are shown by the affidavits, declarations, and depositions submitted by Plaintiffs in support of their motion and whether such facts are sufficient to satisfy the required threshold showing that the Plaintiffs and the putative plaintiffs are similarly situated. First, the Court will determine what facts are shown by the affidavits, declarations, and depositions submitted.

Gregg Hayden states in his affidavit that employees were not paid for time spent in the shop preparing to go to a customer site. (Court Doc. No. 33, Hayden Aff. ¶ 8.)[2] He also states that employees were not compensated for time spent traveling to customer sites

---

[2]    Hayden states in his deposition that supervisors and crew leaders were sometimes given extra shop time in order to get them up to 40 hours per week. (Court Doc. No. 58-7, Hayden Dep. 89-90.) He also states in his deposition that, at the beginning of his employment, employees were paid for shop time, but at some point, Bill Savoy told Hayden that they would no longer be paid for shop time. (*Id.* at 75-76.) Up to that point, Hayden had been giving his employees extra shop time to get them up to 40 hours a week, but he was no longer able to do that after Savoy told him about the policy change. (*Id.* at 90.)

-13-

in the same city pursuant to a company-wide policy. (*Id.* ¶ 9.) Hayden acquired this knowledge as an account manager in Chattanooga. (*Id.* ¶¶ 3, 5.)

Calvin Hopper states in his declaration that employees were required to report to the shop before traveling to the customer site each day and that MPW began compensating employees once they reached the customer site. (Court Doc. No. 55-2, Hopper Decl. ¶¶ 9, 12.) He also states that MPW does not compensate employees for travel to and from customer locations within a 75-mile radius of the shop pursuant to a company-wide policy. (*Id.* ¶ 14.) Chattanooga and Decatur employees typically spend at least one hour per day traveling to and from customer sites. (*Id.* ¶ 17.) Employees also were not compensated for time spent in mandatory safety and branch meetings, which usually took at least one hour per week. (*Id.* ¶ 20.) Hopper gained this knowledge as a branch manager for Decatur and an area manager for Decatur and Chattanooga. (*Id.* ¶¶ 6-8.)

George Hardwick states in his affidavit that MPW does not keep records of the time that employees spend at the shop before traveling to customer sites. (Court Doc. No. 59-2, Hardwick Aff. ¶ 5.) He also states that, pursuant to company-wide policies, employees are not compensated for the time spent traveling to customer sites within 50 miles of the shop or for time spent at the shop preparing equipment for the next job. (*Id.* ¶¶ 6-7, 10.) In Chattanooga, employees spent at least one hour each day traveling to and from customer sites. (*Id.* ¶ 11.) Hardwick gained this knowledge through his interactions with the head of the Industrial Cleaning division in Chattanooga while he was working as a business manager in Chattanooga. (*Id.* ¶¶ 3-4.)

Frank Baker states in his declaration that he was required to, and when he was a manager, he required his crews to, report to the shop prior to each day's work and that the

employees were not compensated for such time spent in the shop. (Court Doc. No. 59-3, Baker Decl. ¶¶ 5-7.) MPW began compensating the employees once they reached the customer site. (*Id.* ¶ 8.) Employees and crew members did not keep records of the time spent at the shop or the time spent traveling to local customer sites because they had been told that they would not be compensated for that time. (*Id.*) Baker states that employees were not compensated for travel within a 75-mile radius of the shop and that this was a company-wide policy. (*Id.* ¶ 10.) Baker spent approximately 8-10 hours per week in the shop and traveling to customer sites. (*Id.* ¶ 11.) He was not compensated for that time, nor was he paid the overtime compensation that was due as a result of those hours. (*Id.*) MPW did not consider time spent traveling to local customer sites when calculating whether employees were due overtime pay. (*Id.* ¶ 12.) Baker was required to attend mandatory safety and branch meetings for at least one hour per week, but he was not compensated for time spent in those meetings. (*Id.* ¶ 14.) Baker gained this knowledge through his employment with MPW as a technician and account manager (presumably in the Chattanooga area). (*Id.* ¶¶ 4, 6.)

Greg Kennedy makes substantially the same assertions in his declaration as Baker makes in his declaration regarding shop time and local travel time. (Court Doc. No. 59-4, Kennedy Decl. ¶¶ 7-8, 10, 12.) Kennedy also states that he spent approximately 8-10 hours per week in the shop and traveling to customer sites and that he was not compensated for that time, nor was he paid the overtime compensation that was due as a result of those hours. (*Id.* ¶ 11.) Kennedy also was required to attend a 46-hour training session for which he was never paid. (*Id.* ¶ 5.) Kennedy gained this knowledge of MPW's

compensation policies while he was a technician at MPW (presumably in Chattanooga). (*Id.* ¶¶3-4.)

Antonio Phillips makes substantially the same assertions in his declaration as Baker and Kennedy make in their declarations regarding shop time and local travel time. (Court Doc. No. 59-5, A. Phillips Decl. ¶¶ 8-9, 11, 13.) Phillips also spent approximately 8-10 hours per week in the shop and traveling to customer sites and was not compensated for that time, nor was he paid the overtime compensation that he was due as a result of those hours. (*Id.* ¶ 12.) Like Kennedy, Phillips attended a 46-hour training session for which he was not paid. (*Id.* ¶ 6.) Phillips gained this knowledge while he was a technician at MPW (presumably in Chattanooga). (*Id.* ¶¶ 3-4.)

Ken Finchum states in his declaration that employees of MPW were required to spend time in the shop before traveling to customer sites and to attend mandatory safety and branch meetings and that the employees were not compensated for such time. (Court Doc. No. 59-6, Finchum Decl. ¶ 4.) He also states that MPW did not keep accurate records of all of the hours worked by employees. (*Id.* ¶ 5.) Finchum states that he was informed that MPW refused to pay overtime rates for shop time. (*Id.* ¶¶ 8-9.) Finchum estimates that there were approximately two hours of work each day – consisting of shop time and travel time – for which employees were not compensated and which were not included in the calculation to determine entitlement to overtime compensation. (*Id.* ¶¶ 11-12.)

Plaintiffs also submit the depositions of Gregg Hayden and Bill Savoy. In his deposition, Gregg Hayden describes the requirement to report to the shop before going to the customer site and states that employees were not paid for certain tasks performed

while in the shop.  (Court Doc. No. 59-7, Hayden Dep.[3])  Bill Savoy primarily describes the

lack of recordkeeping at certain branch offices of MPW and the company-wide travel policy.

(Court Doc. No. 59-8, Savoy Dep. 34, 75-76, 115-16, 129-30.)

For purposes of the notice stage analysis, the Court believes that Plaintiffs have

presented sufficient evidence of the following: (1) MPW had a company-wide policy of not

compensating employees for shop time and of compensating for travel time based on

mileage rather than hours spent in travel; (2) employees were not compensated for

mandatory safety and branch meetings; and (3) MPW failed to keep accurate records of

all time worked by employees.

Having determined what facts are shown by the affidavits, declarations, and

depositions, the Court will determine whether such facts show that the Plaintiffs and the

putative plaintiffs are similarly situated.    As described above, to show that Plaintiffs and

the putative plaintiffs are similarly situated, Plaintiffs are required to put forth a "modest

factual showing" or make "substantial allegations" that the Plaintiffs and the putative

plaintiffs were victims of a common policy or plan that violated the law.  *See supra* Part II.A.

Plaintiffs have done so: they have shown that the Plaintiffs and the putative plaintiffs were

subject to MPW's company-wide policy of failing to pay employees for shop time and travel

time.  Nevertheless, Defendant argues that Plaintiffs have failed to show that they and the

putative plaintiffs are similarly situated for several reasons: (1) because some, if not all, of

the putative class members will be subject to the Motor Carrier Act exemption to the FLSA;

(2) because there are numerous factual differences between the class members that will

---

[3]        Because the page numbers of this deposition are not readable, the Court cannot
provide pinpoint citations to this portion of the record.

require individual analyses; and (3) because Plaintiffs have failed to present evidence that they or the members of the proposed class were actually denied overtime compensation.

(1)  *Motor Carrier Act Exemption*

Defendant argues that many, if not all, of the putative class members are subject to the Motor Carrier Act exemption to the FLSA and, therefore, are not similarly situated to any class members who may not be subject to the exemption.  *See supra* Part I.B (describing the Motor Carrier Act exemption).

Defendant cites to several cases in support of its argument.[4]  In *Reich v. Homier Distributing Co.*, the court refused to conditionally certify a class of all sales partners because determining whether each sales partner qualified as a "loader" under the Motor Carrier Act would require a "highly individualized, fact-specific inquiry" that defeats the purpose of a collective action.  362 F. Supp. 2d at 1013.  In *Diaz v. Electronics Boutique of America*, which involved two named plaintiffs, Ostrander and Diaz, who sought to represent two different subclasses within a larger class of managers, the court refused to grant conditional certification because, among other reasons, the individual factual analysis required to determine whether plaintiff Ostrander was exempt from the FLSA, as he argued he was, would also be required of all store managers he sought to represent, making class

---

[4]        Among the cases cited by Defendant in support of this argument is *Mike v. Safeco Insurance Co. of America*, 274 F. Supp. 2d 216.  In *Mike*, the plaintiff, a claims representative of the defendant, claimed that he was inappropriately classified as an administrative employee when he was performing non-administrative tasks, and he sought to represent a class of claims representatives.  *Id.* at 217, 220.  The court refused to certify the class, explaining that the plaintiff's claims were individualized and based on his particular day-to-day tasks and not based on a company-wide policy of the defendant.  *Id.* at 221.  Because the plaintiff did not challenge a company-wide policy, but instead asserted that his employer treated him in a certain way, *id.*, this case is clearly distinguishable from the instant case and does not provide any guidance in determining whether to certify this class.

treatment inappropriate. 2005 WL 2654270, at *1, 4. Although these cases certainly seem to support Defendant's contention that the potential applicability of the Motor Carrier Act exemption defeats Plaintiffs' assertion that the putative plaintiffs are similarly situated, these are not the only cases that have addressed exemptions in the context of conditional certification.

There are other cases in which courts have determined that the potential applicability of an exemption is not an issue at the notice stage of analysis, but rather is an issue for the second stage. For example, several courts have noted that "the various defenses available to defendant which appear to be individual to each plaintiff" should be considered at the decertification stage. *Thiessen*, 267 F.3d at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678); *Aguayo*, 2005 WL 2436477, at *2; *Olivo*, 374 F. Supp. 2d at 548 n.2. Further, in *Aguayo v. Oldenkamp Trucking*, the defendant argued that its defense under the Motor Carrier Act exemption precluded class certification because it would require a fact-specific inquiry into whether the exemption applied to each class member. 2005 WL 2436477, at *5. The court rejected the defendant's contention, explaining that defendants bear the burden of proving exemptions from the FLSA, which are narrowly construed. *Id.* at *7-8 & n.1. At the notice stage, all that is required is substantial allegations supported by declarations, and once the plaintiff has met that burden, the case may be conditionally certified as a collective action, regardless of what exemptions the defendant wishes to assert at a later time. *Id.* at *8 & n.1. In addition, in *Gambo v. Lucent Technologies, Inc.*, the defendant argued that determining the scope of the collective action would require a case-by-case investigation of each putative plaintiff's job duties and compensation, making the case inappropriate for collective action. 2005 WL 3542485, at *6. Explaining its decision to allow notice to issue,

-19-

the court stated, "Perhaps the investigation and analysis required to determine whether particular opt-ins are similarly situated, so as to fairly proceed to judgment in a collective action, ultimately will prove to be sufficiently unwieldy or cumbersome that a collective action will not be appropriate in some or any form. But that does not, under relevant caselaw, mean that notice may not fairly issue under the more lenient step one FLSA analysis." *Id.* (citations omitted).

The Court is persuaded by the reasoning of this latter group of cases. The notice stage of analysis is centered on whether the plaintiff has demonstrated, through allegations and factual support, that he and the putative class members were similarly situated – that is, victims of a common policy or plan of the defendant. Defendants have the burden of proving any exemptions from the FLSA. The Court believes that, at this stage, a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff.

In this case, Defendant has done nothing more than assert that the Motor Carrier Act exemption may apply in this case and that such applicability would result in the putative plaintiffs not being similarly situated. Defendant cannot overcome Plaintiffs' showing, if sufficient to meet their burden, with an assertion of the possibility of an exemption.

(2) *Individual Inquiries*

Defendant also argues that the numerous factual differences that exist among the putative class members render Plaintiffs' claims inappropriate for collective action. Specifically, Defendant points to the differences in the amount of travel time and shop time in which each employee engaged each week.

-20-

Several courts have stated, however, that "disparate factual and employment settings of the individual plaintiffs" should be considered at the second stage of analysis. *Thiessen*, 267 F.3d at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678); *Aguayo*, 2005 WL 2436477, at *2; *Olivo*, 374 F. Supp. 2d at 548 n.2. In addition, as noted above, the *Gambo* court concluded that notice may issue under the first stage of the analysis even if it appears that the investigation and analysis required to determine whether the putative plaintiffs are similarly situated may prove to be sufficiently cumbersome such that a collective action is not appropriate. 2005 WL 3542485, at *6. Further, in *Ray v. Motel 6 Operating Limited Partnership*, the court noted that differences in "age, year of termination, type of termination, division in the company in which they worked, employment status, supervisors and salaries" were properly considered at the decertification stage. 1996 WL 938231, at *3. Thus, once Plaintiffs have met their burden at the notice stage, Defendant cannot overcome Plaintiff's showing by arguing that individual issues may dominate; rather, if after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the Defendant may move the Court to decertify the class.

(3)   *Evidence of Overtime*

Defendant also argues that the Plaintiffs have not submitted adequate evidence that Plaintiffs or the putative class members were actually denied overtime compensation. They assert that, even if Plaintiffs can prove a company-wide policy of refusing to pay employees for travel time and shop time, such additional hours did not necessarily push employees over the 40 hours per workweek required to trigger the overtime compensation provisions; in other words, it is possible that, although employees were not paid for all of the hours they

-21-

worked, they still worked less than 40 hours per workweek, and thus the overtime compensation provisions were not invoked.

As noted above, Plaintiffs have presented evidence of a common policy or plan: the affidavits, declarations, and depositions discussed above describe a company-wide policy of failing to pay employees for shop time and travel time. Plaintiffs have also presented evidence that two of the named Plaintiffs, Baker and Antonio Phillips, and a third employee, Kennedy, actually worked overtime as a result of unpaid shop and travel time but were not compensated for such overtime hours.[5]

Plaintiffs have also presented evidence that MPW failed to keep records of all time worked by its employees. This factor is critical to this issue at this stage of analysis. Defendant is correct that evidence that shows the existence of a company-wide policy of not paying employees for all hours worked does not necessarily also show that the failure to pay employees for all hours worked resulted in violations of the FLSA's overtime compensation requirements. As a result, the Court could require Plaintiffs to produce more evidence at this stage, but to do so would fail to recognize the difficulty faced by Plaintiffs in producing such evidence as a result of Defendant's lack of record-keeping. Accordingly, the Court believes that the Plaintiffs have submitted evidence sufficient to meet their

---

[5] Defendant argues in its sur-reply that the Court should give little weight to the declarations of Baker, Kennedy, and Antonio Phillips because the deposition of Gregg Hayden contradicts portions of those declarations. All that is required at this stage, however, is that Plaintiffs submit "detailed allegations supported by affidavits which successfully engage defendant['s] affidavits to the contrary." *Aguayo*, 2005 WL 2436477, at *3. Plaintiffs have done exactly that by submitting these declarations.

burden at this stage of analysis on the issue of whether the employees were actually denied overtime compensation.[6]

Accordingly, the Court will **GRANT** the Plaintiffs' motion for conditional certification of a collective action pursuant to § 216(b).

### B.   Substance and Scope of § 216(b) Notice

Having determined that Plaintiffs will be permitted to send notice to the putative class members, the Court must now determine the appropriate substance and scope of the notice. Defendant argues that the notice should only be sent to certain geographic areas for which Plaintiffs have submitted evidence and that the notice period should be only two years.

#### 1.   *Geographic Scope*

First, Defendant argues that the notice should be sent only to present and former employees at MPW's branch locations in Chattanooga, Tennessee, and Decatur, Alabama, because Plaintiffs' proof relates only to those particular branches.

---

[6]     What is somewhat more troubling to the Court is the fact that Plaintiffs submitted declarations by only two of the four named Plaintiffs. Part of the Plaintiffs' burden at this stage is to prove that the named Plaintiffs are similarly situated. *See, e.g., Diaz*, 2005 WL 2654270, at *3. The declarations of Baker and Antonio Phillips are sufficient to prove that Baker and Antonio Philliips were both denied overtime compensation and are similarly situated to each other. The other evidence submitted, as explained above, is sufficient at this stage to prove that Baker and Antonio Phillips are similarly situated to the putative plaintiffs. The question is whether the evidence submitted by Plaintiffs is sufficient to prove that White and Ivan Phillips are similarly situated to each other and to the putative plaintiffs. In this instance, the Court believes that it is. The Court has already concluded that the evidence submitted sufficiently shows, for purposes of the notice stage analysis, that all hourly-paid employees of MPW were subject to the company-wide policy regarding shop and travel time and that the lack of record-keeping by MPW allows the Court to infer that such unpaid hours may have resulted in overtime compensation violations. Those conclusions, although made with regard to putative plaintiffs whose identities are not yet known, are equally applicable to White and Ivan Phillips because they are in precisely the same position as Baker and Antonio Phillips and the putative plaintiffs.

-23-

Defendant is correct that the MPW employees who gave the affidavits, declarations, and depositions that were submitted in support of Plaintiffs' motion are or were employed at either the Chattanooga, Tennessee, branch office or the Decatur, Alabama, branch office. It appears that Finchum's declaration is based on conversations he had with Hayden and the Plaintiffs, so his declaration is limited to Chattanooga, Tennessee.

These declarations, however, provide evidence of company-wide policies regarding travel and shop time. For example, Hayden states that the travel policy was a company-wide policy. (Hayden Aff. ¶ 9.) Hopper states that he was told by his superiors that the travel policy was a company-wide policy, and he discussed the travel policy with employees in Birmingham, Rockport, and other locations. (Hopper Decl. ¶¶ 14, 17.) Hardwick states that he was told by persons in the corporate office that the travel policy was a company-wide policy, that he spoke with persons in the Hebron branch office who said that they also adhered to the travel and shop time policies, and that, to his knowledge, both the travel policy and shop time policy were company-wide policies. (Hardwick Aff. ¶¶ 6-10.) Baker, Kennedy, and Antonio Phillips state in their respective declarations that the travel policy was a company-wide policy and that each man was told that shop time would not be compensated. (Baker Decl. ¶¶ 8, 10; Kennedy Decl. ¶¶ 8, 10; A. Phillips Decl. ¶¶ 9, 11.)

Through these declarations and affidavits, Plaintiffs adequately allege, for purposes of notice to putative plaintiffs, that the travel and shop time policies were company-wide, and therefore, notice may be sent company-wide.

2. *Statute of Limitations*

Second, Defendant argues that the statute of limitations should be limited to two years instead of three years because there is no evidence that MPW acted willfully.

The Sixth Circuit has found that "an employer's recordkeeping practices may . . . corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002). In this case, as explained above, Plaintiffs have presented evidence of MPW's lack of recordkeeping. Accordingly, the Court will allow notice for a three-year notice period.

Defendant also argued, before Plaintiffs submitted additional affidavits and declarations, that the affidavits submitted by Plaintiffs only supported a two-year statute of limitations because the affiants had not worked at MPW three years prior to the filing. While that statement was accurate when Defendant made it, Plaintiffs have now submitted several more affidavits, including one by George Hardwick, who began working at MPW in June of 2002, which is three years prior to the filing of this action. (Hardwick Aff. ¶ 3.)

        3.     *Content of Notice*

The notice and consent annexed to the order accompanying this memorandum will be approved to be sent to all hourly-paid employees in the Industrial Cleaning Services and Facilities Management segment who have been employed by MPW at any time from June 2, 2002, to the present.

Further instructions regarding the Notice and Consent are included in the accompanying order.

### III.  CONCLUSION

Defendant's motion to strike will be **DENIED**.  Plaintiffs' motion for conditional certification of a collective action and for court approved notice to proposed class members will be **GRANTED**.

A separate order will enter.

_____<em>s/ Harry S. Mattice, Jr.</em>_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
